**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

ARLO TECHNOLOGIES, INC.,

Plaintiff,

v.

U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA

Defendants.

Court No. 26-00609

**COMPLAINT**

1. Arlo Technologies, Inc. ("Plaintiff") is a U.S.-based importer of merchandise currently subject to the challenged duties.

2. President Trump invoked the International Emergency Economic Powers Act ("IEEPA"), through declarations of national emergencies under a series of Executive Orders ("EOs"), to impose new and extensive tariffs on nearly all foreign origin imported goods, with the first tariffs having gone into effect in February 2025. Plaintiff sources its imports from countries subject to these tariffs, and as importer of record, Plaintiff is responsible for paying these tariffs on the imported goods.

3. This Court and the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") held that IEEPA does not authorize these challenged tariffs. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir.), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

4. Through this action, Plaintiff asks this Court to hold that the IEEPA tariffs

imposed through EOs[1] and their amendments by Defendants, including their underlying EOs that directed them, are unlawful, as this Court and the Federal Circuit previously held in *V.O.S. Selections*.

5. On November 5, 2025, the Supreme Court heard oral argument in the consolidated appeals of *V.O.S. Selections* and the companion case arising out of the U.S. District Court for the District of Columbia[2], and is expected to rule in the near future.

6. This separate action is necessary, however, because even if the IEEPA tariffs and their underlying EOs are held unlawful by the Supreme Court, importers that have already paid IEEPA duties, including Plaintiff, may not be guaranteed a refund for those unlawfully collected duties without their own judgment and judicial relief.

7. Further, this time-sensitive action is necessary because the entries for which Plaintiff paid IEEPA tariffs generally began liquidating as early as December 12, 2025. As such, Plaintiff seeks relief from the upcoming liquidations to ensure that its right to a complete refund is not jeopardized.

8. Accordingly, Plaintiff seeks (i) a declaration that the IEEPA tariffs are unlawful and (ii) a full refund from Defendants of all IEEPA duties that Plaintiff has already paid to the United States in compliance with the challenged EOs, including the continued future payments of such duties.

**PARTIES**

9. Plaintiff, Arlo Technologies, Inc., is a U.S. Company, incorporated in c/o The

[1] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025) ("China Fentanyl EO"); Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025) ("Mexico Fentanyl EO"); Exec. Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025) ("Canada Fentanyl EO"); Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal EO").

[2] *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

10. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. that enforces federal customs laws. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

11. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

12. Defendant United States of America is the recipient of the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

13. Defendants are referred to collectively in this complaint as "CBP".

**JURISDICTION**

14. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

15. This Court has the same powers in law and equity of, or as conferred by statute upon, a United States District Court. 28 U.S.C. § 1585. The Court can enter a money judgment against the United States in a civil action commenced under 28 U.S.C. § 1581 and order any other appropriate form of civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus and prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

16. Plaintiff has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the unlawful IEEPA tariffs, as enforced and collected by CBP. Due to the challenged EOs, Plaintiff has paid IEEPA duties to the United States and has accordingly suffered injury caused by those orders. Declaratory relief

from this Court would redress those injuries.

17. Plaintiff also faces imminent harm because some entries for which it paid IEEPA duties have liquidated on or shortly after December 12, 2025, and other entries will liquidate soon. Declaratory relief from this Court would resolve such imminent harm.

## GENERAL PLEADINGS

### I. President Trump invokes IEEPA as authority for imposing a series of tariffs.

#### A. The IEEPA duties

18. On February 1, 2025, President Trump issued three EOs imposing tariffs on Canadian, Mexican, and Chinese origin goods imported into the United States. Each EO was premised on IEEPA authorizing the President to impose such tariffs, justifying these tariffs under IEEPA because of a purported declared national emergency. Collectively, these are referred to in this complaint as the "IEEPA Fentanyl Orders".

19. The EO directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties to Address the Situation at Our Southern Border* ("Mexico Fentanyl EO"),[3] imposed an additional 25% tariff on the importation of Mexican origin goods. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

20. The EO directed at Canada, Executive Order 14193, 90 Fed. Reg. 9,113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Fentanyl EO"),[4] declared a national emergency because of opioid trafficking, also

[3] Exec. Order No. 14194, *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025).
[4] Exec. Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025).

imposing a 25% tariff, with some exceptions.

21. Finally, the EO directed at China, Executive Order 14195, 90 Fed. Reg. 9,121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Fentanyl EO"), also declared a national emergency due to "the sustained influx of synthetic opioids" and declared that "[m]any [People's Republic of China]-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce."[5] The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id*.

22. The China Fentanyl EO imposed an additional 10% tariff on Chinese origin products imported into the United States, on top of other existing duties.

23. On February 5, 2025, just four days later, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*. ("China Fentanyl EO Feb. Amendment").[6]

24. Shortly thereafter, on March 3, 2025, the President amended the China Fentanyl EO again in Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("China

---

[5] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[6] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025).

Fentanyl EO March Amendment").[7] The amendment raised the incremental tariffs on imports from China to 20% and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis." *Id*.

25. On April 2, 2025, President Trump declared another national emergency citing to trade deficits with our trading partners, issued under Executive Order 14257, 90 Fed. Reg. 15,041 ("Reciprocal EO"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[8] The Reciprocal EO imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, 2025, and additional "reciprocal" tariffs on countries listed in Annex I, effective April 9. *Id*. These higher country-specific tariffs range from 11% to 50%. *Id*.

26. The Reciprocal EO claims that "U.S. trading partners' economic policies … suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *See* Reciprocal EO.

27. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on products of China by 50%, increasing the rate from 34% to 84%.[9]

28. By the next day, the President suspended the higher country-specific tariffs on all countries for 90 days, except for China for which he raised the "reciprocal" tariff rate again, increasing the rate from 84% to 125%.[10] Meanwhile, the 20% IEEPA Fentanyl tariff on China-

---

[7] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[8] Exec. Order No. 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

[9] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

[10] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15,625 (Apr. 15, 2025) ("Modification of Reciprocal EO").

origin imports remained in place, such that most imports from China faced a minimum combined 145% IEEPA tariff rate.

29. In implementing these EOs, the Defendant directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring that goods subject to the challenged tariffs be entered under new HTSUS codes.

30. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, *et al. v. Donald J. Trump*, *et al.*, No. 25-cv-00066 (Dkt. 2). As discussed below, this Court held that the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed.

31. Since the *V.O.S. Selections* complaint was filed, President Trump has issued additional EOs invoking IEEPA in the recent months, imposing additional tariffs and modifying others. Through this complaint, Plaintiffs challenge those orders the Federal Circuit has already held to be unlawful, that is EOs Nos. 14193 (Canada Fentanyl EO), 14194 (Mexico Fentanyl EO), 14195 (China Fentanyl EO), 14257 (Reciprocal EO), and 14266 (Modification of Reciprocal EO).

**B. CBP's implementation of the unlawful tariffs**

32. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

33. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the HTSUS. Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings within each chapter of the HTSUS describe broad categories of merchandise, while its subheadings provide a stipulated division of

the goods within each heading. *Id.*

34. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11. ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

35. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

36. When goods are imported into the United States, CBP is responsible for assessing and collecting all applicable duties on those goods, after confirming the HTSUS classification and the applicable rates of the goods, as established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

**C. Liquidation**

37. Liquidation "means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

38. Typically, when goods are imported (or entered) into the United States, the importer of record pays an estimated duty on the entry based on its customs entry summary declaration, which asserts an entered value, country of origin, and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the entry summary declaration and may inspect the goods to confirm the information declared by the importer of record.

39. CBP fixes the final appraisement of the entered merchandise by confirming the entered value pursuant to 19 U.S.C. § 1401a, the appropriate HTSUS classification, the Most

Favored Nation ("MFN") duty rate applicable to the HTSUS classification of the good, and the tariff rate[s], if any, for the imported goods. *See* 19 U.S.C. § 1500.

40. Once the final amount of duty owed is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(a); 19 C.F.R. § 159.9.

41. Liquidation, unless extended, must occur within one year from the date of entry, among other possible dates depending on the circumstances. *See* 19 U.S.C. § 1504(a). Typically, by operation of law, liquidation is done automatically at the rate of duty, value, quantity, and amount of duties asserted by the importer of record at the date of entry of the merchandise, if not liquidated within one year. *See* 19 U.S.C. § 1504(a); 19 C.F.R. § 159.11. CBP, however, tries to liquidate entries 314 days after the date of entry of the goods and will provide notice of liquidation on CBP's public website. *See* 19 C.F.R. § 159.9.

42. CBP has discretion to extend the deadline for liquidation for up to one additional year, after the 1-year statutory period for liquidation, pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

43. Once liquidation has occurred, and *if* the action is protestable under 19 U.S.C. § 1514, an importer of record has 180 days from the date of liquidation to protest the administrative decision, asking CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514; 19 C.F.R. § 174.11.[11] Not all administrative actions or liquidations, however, are protestable; where CBP acts in a ministerial capacity (*i.e.*, without making a decision itself under 19 U.S.C. § 1514(a)) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

[11] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

44. This Court recently confirmed its power to order the reliquidation of entries, stating that "the panel in In re Section 301 Cases unanimously agreed—as we do now—that the USCIT has 'the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties.'". *See AGS Company Automotive Solutions et. al v. U.S. Customs and Border Protection, et al.*, Consol. Court No. 25-00255 (Slip Op. 25-154), at 6 (citing to In re Section 301 Cases, 524 F. Supp. 3d 1355, 1363 (Ct. Int'l Trade 2021)).

**II. IEEPA does not authorize the imposition of tariffs.**

45. The challenged EOs cite IEEPA, 50 U.S.C. § 1701 *et seq*., the National Emergencies Act, 50 U.S.C. § 1601 *et seq*., section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

46. None of these statutes authorizes the President to impose tariffs. Of these, the President and CBP are relying only on IEEPA to impose and collect the IEEPA duties. IEEPA does not authorize what the challenged EOs seek to impose.

47. IEEPA grants the President certain powers, but they "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

48. Those powers include the ability to "investigate, regulate, or prohibit" certain transactions in foreign exchange, payments through banks involving foreign countries or nationals, or the imports of "currency or securities." 50 U.S.C. § 1702 (a)(1)(A).

49. The President may also control, block, or prohibit the movement or importation of funds or property in which "any foreign country" or foreign national has "interest" in, and which is also subject to U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(B).

50. Finally, and only in circumstances when the U.S. is engaged in "armed

hostilities" or has been attacked by a foreign country or foreign nationals, the President may "confiscate" property of such a foreign person or country that is also subject to U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(C).

51. The text of IEEPA does not use the word "tariff" or any term of equivalent meaning.

52. IEEPA was first enacted in 1977 and has been amended several times, but it has never been amended to authorize, or used by any other President to impose, tariffs.

**A. The U.S. Constitution vests the power to impose tariffs in Congress, not the President.**

53. The United States Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

54. The United States Constitution also provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises…" U.S. CONST. art. I, § 8, cl. 1 ("Taxing Clause"), and "[t]o regulate Commerce with foreign Nations." *Id*., cl. 3 ("Commerce Clause").

55. It has always been understood that tariffs fall within the Taxing and Commerce Clauses.

56. To the extent it is ever permissible under the United States Constitution for Congress to delegate any part of the powers vested in it by the Constitution to the President, it must do so, at a minimum, by providing an intelligible principle to direct and cabin the President's authority. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482, 222 L. Ed. 2d 800 (2025). Congress did no such thing with IEEPA. This is evidenced by the muddled manner in which these on-again/off-again IEEPA duties have been threatened, modified, suspended, and re-imposed.

57. Interpreting the text of IEEPA as authorizing tariffs would then also require

striking down IEEPA as unconstitutional under the nondelegation doctrine for lack of any intelligible principle provided by Congress.

58. Moreover, "[c]ourts expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (cleaned up) (*quoting Utility Air Regulatory Group v. EPA*, 573 U. S. 302, 324 (2014)). When Congress has not clearly spoken, courts are directed to find that matters "of vast economic and political significance" are beyond the power of the President. *Biden v. Nebraska*, 600 U.S. 477, 505–06 (2023).

59. The challenged EOs are clearly "of vast economic and political significance" because IEEPA does not clearly authorize the President to impose tariffs, nor does it ever mention the words "tariff" or "duty" and is not even housed in the same title of the U.S. Code as Congress's actual trade laws (Title 19); the challenged EOs cannot stand and the Defendants are not authorized to implement and collect the imposed duties.

        **B.    Courts, including this one, have agreed that the IEEPA tariffs are unauthorized.**

60. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was then appealed to the Federal Circuit.

61. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

62. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

63. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia also held that IEEPA does not authorize the imposition of tariffs. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*, before the D.C. Circuit held argument. The cases were consolidated, and oral argument was held on November 5, 2025.

### III. Plaintiff paid preliminary IEEPA tariffs

64. As of the date of this complaint, Plaintiff has paid IEEPA duties imposed by the challenged EOs.

65. Plaintiff's imports, subject to the IEEPA tariffs, entered the United States under new HTSUS codes from foreign countries.

66. Plaintiff has paid IEEPA duties on a continuous basis.

67. The entries for which Plaintiff has paid IEEPA duties imposed by the challenged EOs for the IEEPA tariffs began liquidating on or after December 12, 2025.

## STATEMENT OF CLAIMS

## COUNT I
## THE CHALLENGED EOs ARE ULTRA VIRES UNDER *V.O.S. SELECTIONS*

68. Plaintiff incorporates paragraphs 1-67 above by reference.

69. The Court of International Trade in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), held that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

70. As the *V.O.S. Selections* Court explained, IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency; IEEPA does not authorize the imposition of tariffs or duties on imports, and neither the text nor its legislative history contains any clear delegation from Congress to the President to set tariff rates.

71. The Federal Circuit affirmed, holding that Congress did not, under IEEPA, clearly delegate to the President the authority to impose tariffs and that interpreting IEEPA to permit such authority would raise constitutional concerns, including under the major questions and non-delegation doctrines.

72. The challenged EOs are identical, in structure and authority claimed, to those struck down in *V.O.S. Selections*. The challenged EOs purport to impose duties and modify the HTSUS solely under IEEPA. For the same reasons described in *V.O.S. Selections* and affirmed by the Federal Circuit, those EOs exceed the President's statutory authority, and are therefore unlawful and without effect as applied to Plaintiff.

73. Plaintiff respectfully requests that this Court apply its precedent and the binding decision of the Federal Circuit, declare the challenged EOs unlawful as to Plaintiff, and order the full refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

**COUNT II**
**ALTERNATIVELY, THE CHALLENGED EOs ARE UNCONSTITUTIONAL**

74. Plaintiff incorporates paragraphs 1-73 above by reference.

75. In the alternative, if the Court were to construe IEEPA as authorizing the imposition of tariffs, the IEEPA EOs must nevertheless be held unlawful because it would constitute an impermissible delegation of legislative power from Congress to the President.

76. The United States Constitution vests in Congress exclusively the power to "lay

and collect … Duties." U.S. CONST. art. I, § 8, cl. 1.

77. Under separation-of-powers principles and binding precedent of the U.S. Supreme Court, Congress cannot delegate its power to the President unless, at the very least, it provides an intelligible principle that directs and meaningfully constrains the President's exercise of that power. IEEPA, however, does not provide such constraints or an intelligible principle.

78. Plaintiff therefore seeks a declaration that the challenged EOs under IEEPA are unconstitutional as to Plaintiff, and order a full refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

**COUNT III**
**DECLARATORY RELIEF, 28 U.S.C. § 2201**

79. Plaintiff incorporates paragraphs 1-78 above by reference.

80. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

81. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the subsequent tariffs.

82. Plaintiff is the importer of record and has suffered injury by complying with the challenged EOs and paying IEEPA duties on goods it has imported into the United States.

83. This Court can exercise its equitable power to enter a declaratory judgment that the challenged EOs are unlawful for any of the above reasons, order the reliquidation of already liquidated entries, and declare that CBP accordingly lacks authority to implement and collect the resulting tariffs, as to Plaintiff.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

a) declare that the President lacks authority under IEEPA to impose tariffs;

b) declare that the challenged EOs are *ultra vires* and void *ab initio* with respect to Plaintiff;

c) declare that, with respect to Plaintiff, CBP lacks the authority to implement and collect any tariffs incorporated in the HTSUS that are based on the challenged EOs;

d) order the United States and CBP to refund the IEEPA duties collected on those entries, with interest as provided by law, to Plaintiff, including any liquidated entries;

e) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

f) grant such further relief as this Court deems proper.

Dated: January 13, 2026

Respectfully submitted,

/s/________________________

Christine Streatfeild
Justin Becker
Patrick de Laperouse
Lauren Shapiro

Baker & McKenzie LLP
815 Connecticut Avenue NW
Washington, DC 20006
Tel: (202) 835 6111
Email: christine.streatfeild@bakermckenzie.com

*Counsel for Plaintiff*